Thank you. May it please the Court, my name is Chris Kirkring. I represent Ms. Wong Kim Vo. For the purposes of this argument today, I'd like to focus on... Could you speak up a little bit or maybe a little closer to the mic? Oh, sure. There you go. Okay. Is that better? That's just fine. Just speak up a little bit. It's fine. All right. Thanks. For the purposes of this argument, I'd like to focus on two issues. First, the government's refusal to file a motion for a one-level departure under Guideline Section 3E1.1. And second, the propriety of the tribal trial courts' imposition of a two-level enhancement for obstruction of justice. With regard to our other issues, we'll rely on our briefing, unless the Court has any other questions. With regard to the government's refusal to file a motion under Section 3E1.1b, this breached the plea agreement and also violated the government's discretionary obligations under the Guidelines. And I think it makes sense to first talk about 3E1.1b in terms of the plea agreement. The text of 3E1.1b has two sections. Subsection A deals directly with the defendant's acceptance of responsibility and entitles a defendant to a two-level reduction if she accepts responsibility in her case. Subsection B is separate, and it entitles a defendant to a one-level reduction if three conditions are met. She qualifies under Subsection A. She has a sentencing level of 16 or greater, and she has assisted in the investigation or prosecution of her own case by timely notifying the authorities of her intention to plead guilty. This subsection, this 3E1.1, was delegated directly in the plea agreement in Paragraph 9, and I believe that's at ER pages 8 to 9 in the record. The first sentence of Paragraph 9 addresses Subsection B, and it is the government's stipulation that Ms. Vaux did timely file. I'm sorry, I didn't interrupt your flow, but I'm looking at the record. What page should I be on, ER? I think it's ER pages. You know what? I was wrong. It's not 8 to 9. It might be 18 to 19. Let me take a look. I just want to be able to make sure I'm following it. Sure. Of course. Yeah. It is. It's evidentiary record pages 8 to 9. That's the plea agreement. Paragraph 9. I'm on it. This is Vaux, right? Yes. I'm on ER excerpts of records. Yes. Page 8. We're talking about Paragraph 9 on acceptance of responsibility. Exactly. And then post-plea conduct. Paragraph 12. Acceptance of responsibility. Paragraph 9. Okay. And that paragraph has three sentences. The first, and are you there? I'm finally up slow, but I'm with you. Okay. I'm happy to wait. No, I'm now with you. I'm slow, but I'm there. The first paragraph deals directly with Subsection B, and it is the government's stipulation that Ms. Vaux did timely file indicate that she intended to plead guilty and that the government was able to save its resources in preparing for her trial. The second sentence deals specifically with Subsection A, and that is the government's assertion that it will make a recommendation regarding Subsection A that takes into account her acceptance of responsibility from both from this point and moving forward. The third section, the third sentence, is merely a statement that in making its recommendations, the government will limit its assessment to the sentencing guidelines and most specifically to Section 3E1.1. What this paragraph does You paraphrased all that, but there's a lot of substance in those sentences. For instance, if at the time of sentencing the United States remains satisfied, she's accepted responsibility. So it refers forward toward the time of sentencing. Sure. So what happened at the time of sentencing? At the time of sentencing, the defense counsel, we recommended that she receive a two-level reduction for acceptance of responsibility. The probation department recommended that she receive a two-level reduction for acceptance of responsibility. The government, on the record, was silent. It made no statement regarding her, whether she should get an acceptance of responsibility reduction under subsection A. However, it did not object to the pre-sentence report's recommendation. And when it came time for sentencing, before Judge Martinez, and I think this is on 441 of the evidentiary record, Judge Martinez recognized that the government did not object to the application of a two-level reduction for acceptance of responsibility. What I guess the question I have is, you're suggesting that there was an agreement on the part of the government, correct? Yeah. Well, the terms of the agreement are set forth in paragraph 9. I know. But I'm not really – it has to be read, it seems to me, in the context of the whole plea agreement. And it sets out where things stand as of the time of the plea agreement. And then you have in later paragraph 12, which also says that there could be possibly misconduct with respect to what may occur. And then you go to the hearing, and there is a real question raised as to the veracity of information provided, both to agents and in the court. So it seems to me that even if you were to read paragraph 9 as an agreement, that it's conditioned by paragraph 12 and then altered by events. Why isn't that a sequential analysis that holds water? I don't – I don't – I actually don't think that's an unreasonable analysis. But that's an analysis specifically with regard to subsection A. Absolutely, the government could have said, could have objected to the pre-sentence report application of a two-level reduction under subsection A. It could have gone to the court and said, hey, this is not warranted. It didn't do that. What it did was it failed to make a comment. It remained silent. And by doing so, essentially adopted the recommendations of the pre-sentence report. When – with regard to subsection B, however – But their only action required is to make the motion, if they remain unsatisfied that the defendant has accepted responsibility. They don't have to do anything. Well, actually, I respectfully disagree. I'm just wondering. Okay. And I think that what – when you look at subsection B, subsection B is not about her acceptance of responsibility. It's about her timely notification to the government of her intent to plead guilty. And so the discretion that the government has to file a motion under subsection B has nothing to do with her acceptance of responsibility. It only has to do with her determination that she – with the determination that she timely notified the government of her intent to plead guilty. And that's actually made clear in the commentary to 3E1.1, where the commentary states that the government is in the best position to know what resources it had to expend. And that's the question that needs to be – that the government needs to answer and file a motion accordingly. Here, we're in a unique position where the government has already established it didn't need to expend any effort for her trial, that there's no evidence that that changed. And the government, in refusing to file the motion, actually indicates that it's for a different reason, an unrelated reason, which is her testimony at Mr. Bowe's trial. So – so subsection B, the moment she pled guilty, that's it? Well, there's – in this circumstance, yes. You can imagine a world in which she pleaded guilty and then tried to retract her guilty plea. Yeah. Or something like that. But here, that never happened. And so the moment she pleaded guilty, her subsequent conduct never gave – never caused them to have to expend efforts for trial. They stipulated to this fact they were obligated by that stipulation. I know your time is running out, but I have an overall question that's just baffling me. Considering the sentence you got, what are you going to gain out of this appeal? I mean, I've been here before with people arguing guideline calculations and all. Depending where you start, what the district judge here was phenomenal – phenomenal in light of Booker and the Post cases. He did a fantastic job. I'm wondering what's going to happen here. I don't see an advantage in you going ahead with your appeal. Maybe I just don't see the overall picture. Well, I think you're – none of us can predict the future. And in that sense, I think that we have a situation where the judge did go under the guidelines. But the first thing – He threw them out. I mean, he did the job. He looked at the guidelines, threw them out, and said, I'm just going to – I'm going to go 3553, and he went all the way and he – as I said, I'm just wondering where this is going to go. And it might – you know, there's certainly the possibility that the same sentence is imposed. However, what we will have is an opportunity to make these arguments, to make it clear. And because Judge Martinez – and you're right, he did do a good job – but the first thing he did was calculate the sentencing guidelines. And we can't step into his mind and determine to what extent those affected where he went when he departed. And what we would like to do is have the opportunity to give that clear record frame at that point. Thank you. Thank you. May it please the Court, Counsel, I'm Vince Lombardi. I'm representing the United States on this appeal. Like the defense, or like the appellant, I will rest on our brief on the two arguments, the minor role and the safety valve adjustment. And we'll attempt to just address the same arguments that the appellant has just made, really primarily the third one. I don't know if we really got to the obstruction issue in terms of the oral argument. After this Court's decision, Espinoza-Cano, which the appellant brought to the Court's attention by way of a supplemental letter some months ago, the standard of review for a decision to file or not file a motion to 3D1.1b is the same as the standard of review for the government's decision to file or not file a substantial assistance motion under 5K1.1. The burden is on the appellant to show that the government didn't file the motion for an unconstitutional reason or for some reason that is unrelated to any substantial government interest. You know, it's arbitrary in some fashion. And the appellant is unable to meet that burden in this case because the government did have a legitimate reason for not filing the third point for acceptance. Yes, Ms. Vo fled guilty. Yes, she did so in a timely fashion. But by her subsequent conduct, and the Court is exactly right, you have to read the plea agreement as a whole and read paragraph 9 and paragraph 12 of the plea agreement together. By her subsequent conduct, Ms. Vo deprived the government of the benefit of that early plea by her false testimony in not one but two different trials, false testimony that the only reasonable conclusion can be were a goad and a spur to her husband and co-defendant to go to trial. The reason the government is given the authority and the power to file for that third point of acceptance is because it's the government that can decide, did the defendant's conduct enable us to avoid a useless trial, avoid a trial that we otherwise would have had to do? And here, in the end, Ms. Vo's conduct did not have that effect. The government had to try this case, and it would have been the same case regardless of whether she fled guilty or not. Think about it. The government would have called the exact same witnesses if both defendants were still in the same case. It would have made the exact same arguments. The trial would have gone essentially exactly the same way. So by her conduct, after her plea, Ms. Vo actually made the government or participated or contributed to the government having to try the case in the end. And that's why the government did not file the motion for the third point of acceptance. Now, yes, I agree with the appellant. The government could have said, we don't think she should get any points for acceptance. We believe she obstructed justice. In the commentary to 3E and to 5C1.2, there is an indication that in some cases obstruction can be grounds to denying all credit for acceptance, although there is some wiggle room in the commentary that in some instances you can actually obstruct but still get credit for acceptance or responsibility. And the government did not object to her receiving her two points because Ms. Vo did not feel particularly guilty. She did accept responsibility for what she did. But by offering testimony that the trial court found to be perjurious and obstructive, it did result in the government having to try this case twice. No resources were conserved as a result of her conduct. And so it was appropriate not to file that third for that third point of acceptance. I have a question. I must have missed something, or maybe I just don't understand sentencing as well as I should. If we give some of the arguments being made some credit, assuming that they would have credit, and we send it back to Judge Martinez, considering how he dealt with the guidelines, and in the end the sentence he gave, somehow I lose where we're going here because it seems as though we're not, we can do the guideline drill, and we can run these points, and we can change whatever counsel's argued, but Judge Martinez really did a fantastic job with regard to the 3553 arguments. He listened to the folks, and he went even below what you recommended. Everybody agreed it was excessive. It was almost a classic application of post-Booker, almost classic. I agree. And I'm just wondering if I missed something, because I was trying to go through the arguments of the appellant to see where did we go wrong, what's going on here. As the Court knows, I was not trial counsel on either of these cases, but I had the same reaction when I read the briefs and I read the record. I don't see how anything changes on remand here. And I agree the judge did a fine job in applying the 3553A factors. I think all counsel did. I think Vo did a good job of the counsel. They had this family problem, and this is a very involved, complex thing. And again, I'm just wondering, doing the guideline drill is a lot of fun. We just love doing that. But in the end, I was trying to figure out what did the judge do wrong here? I mean, what are we doing? And when I looked at that sentence and how he applied all the post-Booker law, I mean, it seemed that it's amazing. I will say, I agree with everything the Court said. I will say, perhaps in the appellant's defense, the judge does have an obligation to perform the guideline calculations. Yes. And they do have to be correct. And it's the defense's position that they're not correct. We disagree with that. But I think Your Honor is correct. This is an instance where let's assume that we want to find fault with one thing or another that the judge said. Maybe he didn't utter a magic word or a magic incantation, for example, on the instruction issue. In the end, I think you're exactly right. What is the, you know, is the error here one that's going to result in a different result, or is it completely harmless? And on these facts, I think it's clearly harmless because the judge didn't impose the sentence because of the guidelines. He imposed the sentence disregarding the guidelines based on the 3553A factors. Go ahead. You raised the obstruction issue and the magic incantation. It does seem that the judge, we get the gist of what he said, certainly as to falsity, but as to the other aspects for perjury, he didn't actually make the findings to tie it up. So the question I have is, how do you judge harmlessness in that situation where you do have a mandatory foundation that you need to determine before taking that into account in the sentencing? I have two points to make in response to that. The first point is, if you actually look at the line of cases that starts with one that's in the appellant's recent letter to the court, those cases are all concerned with cases where it's a defendant testifying at their own trial in their own defense. And Dunnegan and Jimenez are very clear that the reason you require the trial court to make these very specific findings, I shouldn't say very specific. If you look at Dunnegan, they're not that specific. But to make certain findings is because you're trying to balance the defendant's right to testify on their own behalf, a right that is of constitutional dimension, against the court's legitimate interest in discouraging people from lying in court. And so because you have to strike that balance and because you don't want to deter defendants from testifying in their own case, that is why you would require the trial judges to make some finding on these elements. Here, Ms. Bowe is not testifying in her own defense. She's testifying for her husband and co-conspirator. That constitutional interest is not implicated by her testimony. So I think an argument can be made that that line of cases is an opposite or inapposite to this particular circumstance. Now, yes, could the judge have made more specific findings? Absolutely. But that brings me to my second point. You have here a complete record of her testimony. You can read it yourselves. I'm sure you have read it yourselves. The lack of credibility in her testimony, I think, leaps off the page. This is not a case where you necessarily had to be there and observe her demeanor, although Judge Martinez had two different opportunities to do that. Kagan. But that's the one thing he did find was falsity. What he didn't find was materiality and willfulness. Right. So leap off the page, left off the page to him, and he said so. Yes. But I think materiality here is obvious. What was the false part of her testimony? My husband had no idea of what I was doing. The jury necessarily rejected that in convicting him on all counts. That's obvious what the falsity was, and that's so obviously materialist, it probably not need to be stated. It would have been nice if the judge had said it, but it's obvious that that's what everybody is talking about. It's obviously material. And when you read her testimony, it's obviously willful. I mean, it's this is not a case where you're talking about, you know, an important detail, but it's just part of the whole testimony. Here, virtually everything she said, my husband doesn't know anything. Well, what about all the phone calls? She had an explanation for that. You know, what about the drugs in the house? She had an explanation for that that doesn't make a lot of sense. So willful in the sense of willfully false, not just that she said it and she meant to say it, but that she knew she was lying. Yes. And that's the way I interpret the Court's holdings. It goes along with that it's not by mistake, inadvertence, lack of memory. I see I'm out of time. Thank you. Thank you. I think you have some rebuttal time. Well, it says 13 seconds, and no one can say anything in 13 seconds. Please take a moment more. Better than a moment less. With regard to the question of harmlessness in the overall sentence, two things I'd like to point out. One, the Ninth Circuit's case is a mix in Cantrell, which still governed, and they say that it is required that the guidelines be calculated correctly. And second, that harmless error with regard to the overall sentence was never argued by the government, and it wouldn't be appropriate for this Court in this situation to impose harmlessness. If you have any questions with regard to the obstruction of justice, I'd be happy to answer them. The one thing that I would like to point out is that we have the Jimenez-Ortega case, and that case is explicitly clear that it's not appropriate for this Court to substitute its conclusions regarding materiality for the trial court. And what we don't have here is we don't have Judge Martinez making any decisions about materiality. What we have is a very – the defense in this case from the beginning requested specific instances so that it could try and clarify any confusion and never got them. That's exactly what we need here in finding materiality. Thank you. I thank both counsel. United States v. Vo is submitted, and we'll now hear argument in United States v. Nguyen. Good morning. May it please the Court. My name is Michael Martin, counsel for Tam Nguyen. Also with me today is Michael Sennett, who coauthored the brief with me. Counsel, I would first want to just submit most of the arguments on the briefs. The only one that I wanted to address was the fingerprint argument with respect to the argument made by trial counsel in closing. I would first note that the government did, in fact, have some testimony regarding fingerprint evidence during this case in chief. And then what the government failed to do was to lay a proper foundation for admissibility of the balance of the print evidence. So I guess the question then from the Court is, under this scenario, does this make it any different than the scenario in the Hoffman case, which the Ninth Circuit in Thompson both agreed and disagreed with? In the Hoffman case, there was no evidence at all elicited during the trial regarding fingerprint evidence, and then defense counsel sought to argue both lack of fingerprint evidence and then also police negligence. Maybe I'm messed up on the facts here. When the government brought in or attempted to bring in this fingerprint test, they took the fingerprints, had the expert on the stand, defense counsel objected when they asked what the results of the test were. And as I read the transcript, the objection was made, but before the judge could rule, the answer came out, there were no fingerprints, something like that. But it didn't get in because the objection was sustained. I agree. Okay. Now we go down to the end, and we're at argument. And this is where I need your help. In argument, it seems as though counsel, when he was arguing insufficient lack of evidence, the argument was, though, that the government was sloppy in what they were doing in their job, and they could have done this and that. So it wasn't the fact of the result of the test, but it was that the government had botched its job and how it didn't take the test and whatever, and that flips us into a different area. And so that was the improperness. Maybe I'm misreading the argument in briefs. Maybe you can help me on that. Well, Your Honor, I agree in part with what you said, that there was some argument during closing by defense counsel that there was some police negligence. But the closing transcript is full of references to lack of evidence, lack of knowledge, lack of evidence, lack of knowledge. And that was proper. And I think that what the district court did when the government objected and then did not allow defense counsel to make the record as to why it was proper to argue lack of evidence, and then the district court didn't state the basis for sustaining the objection. We're kind of left in this limbo. I think the proper result would have been the one that is suggested in Thompson's case. That wasn't done in the Hoffman case, and that is to sustain the objection in part, give a limited instruction to the jury that this argument is only relevant for lack of evidence, and direct defense counsel to proceed only arguing lack of evidence and not police misconduct with respect to the lack of fingerprints. Absolutely, I think it should be. Just one more question. I think, if I'm correct, I mean, I want to make sure I'm in the right place. When Goldsmith was arguing, the one statement that drew the objection was we have, and you're right all along, he said there's no lack of evidence. He says we have no evidence or testimony and fingerprints, lack of evidence, and that's when the objection hit. So you're saying all he was arguing is lack of evidence had nothing to do with the fingerprints, but doesn't that go back to the trial part where the issue of the fingerprints or the lack thereof or evidence was being argued, and that you were arguing of the conduct of the government in the way that they proceed with their investigation? Am I got this thing mixed up or what? Well, Your Honor, I'm not sure I agree with the court's portrayal of what happened in trial. I think that — Well, maybe you could straighten out, because maybe that's where I'm all messed up. I wish I could. That's Mr. Lombardi, because it would help both of us. But it seems to me that what was happening in the trial, that Mr. Goldsmith was attempting to argue, to bring out testimony with regard to lack of evidence, and also was arguing lack of knowledge or trying to bring out testimony with respect to lack of knowledge. At some point, he included police negligence, and I think that's where the problem arises, and that's what was happening in the Thompson case and the Hoffman case. And that's where the real hang-up is. I think that the resolution should have been a limited instruction, and I can't say, and I don't think the government can prove, that there was harmless error here because of the previous hung jury at the first trial in this matter, which is exactly what happened in the Thompson. Those arguments, you know, different jurors, different time. I don't know what that means, but there was a hung jury, but this is a new trial. I agree. I agree. I guess the question is, it's just the – it's the same argument with a more generality or the degree of generality if you keep looking at what was argued in closing, which is, you know, there's no evidence, there's lack of evidence, there's no evidence. I mean, that was sort of – that was what the jury was beat over the head with. Look, there's just no evidence here. So why – why is this limitation on the fingerprint evidence really change anything? Because it's a subset of that same argument, and that really was the argument that was made to the jury. There's just no evidence here to connect him up, and it's a weak case. I guess I'm – you said, no, there couldn't be harmless error here, but I'm wondering why not, given the nature of the closing, which beat and really focused on that aspect. Well, this was a case in which there was no direct evidence that Mr. Nguyen had knowledge, possession of the drugs in question. And so everything was circumstantial. And I just – I think it's a – it makes it far more difficult at trial to say that something was not – had it been argued properly and correctly, I submit, it wouldn't have made a difference. It just seems like, you know, defense counsel is – has the right to argue inferences about lack of evidence. The fingerprint evidence was one of those inferences in a very circumstantial evidence case. It should have happened. It didn't happen. There should have been a limited instruction. I think that's where our problem was. But again, it doesn't quite answer the precise question of why – the real problem here is there's nothing to connect him up that's direct. It's all circumstantial. And all that boils down to fingerprints being a subset of the whole issue is there's no evidence. So the jury got that pretty clear picture that that was the defense, and they were supposed to see was there any evidence. And so I'm just having trouble wondering why, under that theory and with the evidence that was in front of them, why it would have changed the calculus in terms of a prejudicial – I think it's a difficult question to answer, Your Honor. But I think that, given the fact that the Court sustained objections and Mr. Goldsmith was prohibited from that point, it sends a message to the jury that this is not something to take into consideration, and it should have been. Thank you. Thank you. May it please the Court. Again, Vince Lombardi from the United States. Your Honor, this is one of those issues where I think context is everything. And, Your Honor, the Court has mentioned that the defense was arguing lack of evidence. But lack of evidence why? It's lack of evidence because the government was sloppy. The government was incompetent. And if you read – Could you keep your voice up? I'm sorry. It's lack of evidence because the government was incompetent or sloppy or acted in bad faith. That is the closing argument. And if you look at 703, 704, Mr. Goldsmith started with that the government controlled the evidence and that they did so in a way to win the case. And then he goes on to list all the things that the government could have done, should have done, didn't do. They didn't take a picture of the bucket in the bathroom with the flower on top to show that it wasn't that obvious. They did the same thing with the box of drugs in the front hall. They didn't take a picture with the garbage on top. They didn't take a picture of the public storage facility. They didn't take a picture or get the records for the Acura that he drove up to Canada. I'm just going through the list. Didn't make an adequate inventory of the apartment search. In fact, he disparages the government by comparing it to the kind of inventory you see in a small store. Did a sloppier job than a retailer. No videotape of the search. No photographs of the inside of the car. That's the litany of things he does, things the government didn't do. That's the context. It is only then that he says there's no fingerprint evidence. I just say I don't get it. Why can't he say there's no fingerprint? If there is no fingerprint evidence, why can't he say it? Because it was the context. And, again, you have to go to the court. This is not a question of harmlessness. That's a different question. But I mean, it's uncontested that the government has not successfully introduced any evidence of fingerprints. The jury might reasonably expect in a case like this where you're trying to prove that he's present that there might be fingerprints. And to foreclose the government or the defendant from saying there are no fingerprints when that is true, I don't get it. It's not clear that that's what the trial court did, though. And that's why the context matters. This is – and it's right in the middle of this litany. Because after the objection is sustained, he goes on to say they could have audio taped or videotaped Ms. Vo's statement. So the context is things the government didn't do. Of course. Now, the government tried to get in the fingerprint evidence. And it could have, probably, if it had bothered to get the actual author of the report, but it didn't do it. Correct. So there's no evidence of fingerprints. But by making the argument the way they did, the defense was implying that this is another example of the government not even trying to get evidence, not even trying to do their job. That's what drew the objection. Well, you see, maybe you're right in one sense. Maybe they got it, but they couldn't be bothered to introduce it properly. This is – I understand – I want you to understand this is a different argument from harmlessness. Of course. But I'm trying to figure out why in the world it makes sense to foreclose the defendant from saying something that's obviously true. Well, let's imagine a hypothetical where Mr. Goldsmith doesn't give up after that objection is sustained in that particular context. Let's assume Mr. Goldsmith comes back and says, did the government put a fingerprint expert on? Did they call the person who did the fingerprint examination? Would that have drawn an objection? Probably not, because it's not in that context of the government didn't even try. And would it have been sustained if he had phrased it that way? Probably not. What we have here is exactly the situation that this Court addressed in Thompson. And Thompson has some superficial similarities to this case. The first one is probably not terribly relevant. There was a mistrial and they had to retry the case. In between those two trials, in the first trial, the defense had done exactly what Mr. Goldsmith was doing in this case, say, aha, there's no fingerprints. It's yet another example of the government being sloppy or corrupt or being out to railroad my client. In between the first trial and the second trial, the government filed a motion in limine saying, that's dirty pool. You shouldn't get to do that. And the trial court issued a very sweeping order in limine saying, no reference to fingerprints whatsoever. And this Court properly reversed that and said, no, that goes too far. But it goes on to say the trial court could have limited the use that lack of evidence was put to. The trial court could have said, you can get in that there's no fingerprints, that there's no direct evidence that the defendant handled the drugs. What you can't do is use it to beat up the government and say they're sloppy. Well, you know, as I read this, the government's not being beat up in the sense of accusing the government of corruption. The government's being beat up in the sense the government has lots of resources to prove a case, lots of resources to gather evidence and to introduce it. But they haven't. From which, of course, the defendant wants the jury to draw the inference, well, they had resources. They didn't introduce the evidence. And therefore, you know what? There may not be any evidence. I respectfully disagree that that's the context. Again, if you go back and you read 703, 704, and 705, it starts out with the government controls the evidence. The government controls the evidence in a way to win the case. And then he goes on to talk about all the things the government didn't do and could have done that, in retrospect, defense counsel thinks they should have done. I'm reading it, and they're saying the government's not objective. Obviously, it's an adversarial system. Here's all the things the government could have done to prove the case. Here's what they didn't do. That's not an accusation of corruption. That's just a statement of fact. I disagree that that's not the way I read it. I don't believe that's the way the AUSA perceived it, and I don't believe that's the way the trial judge perceived it. It was, again, you have to put it in the AUSA perhaps incorrectly. I mean, the trial judge sustained the objection. We've not appealed it. Tries to get in the fact that there's no fingerprints whatsoever, which, by the way, is evidence that helps the defendant. You know, this is, you know, he's trying to front the judge. That's what usually happens in these cases. They go in and they find fingerprints, but they can't really identify them with anybody. And then the defense says, hey, there's no fingerprints to connect my person to that.  And I think, you know, I've not talked specifically, but AUSA is trying, if there's no fingerprints, we tend to talk about it because everybody watches CSI now and they expect there to be fingerprints. So you bring it up. And this brings me to the harmless error analysis. The jury heard that there were no fingerprints. They heard it twice. There was actually two separate instances where it came up, the packaging in the car, which is like at 104, and then the packaging from the Lane Street apartment, which is at 172. In each instance, the question was asked. In the first instance, the objection came after the answer got in, and there's no motion to strike. The jury is never told to disregard the answer. In the second instance, the objection came in from the transcript right before the answer, but the answer was uttered nonetheless. Again, no motion to strike. And if you read the whole transcript, Mr. Goldsmith moves to strike other answers. He knows how to do that. So the jury heard that answer. They're never told to disregard it. Well, if we go to Thompson, then, and say it controls, because that's going to have to be where we are. Correct. There's – it would have to go, then, to the first part of Goldsmith's argument, closing argument, where he talks about not only the lack of evidence, but they didn't keep a log of what they were doing. They didn't make an inventory. I've seen inventories of small stores better. You have a real organized system here. Here they just scoop up things from a room and saying, this is from the room. We hope to have video of what they did in the search. We have no pictures. And then he says, we have no evidence and testimony and fingerprints. They're trying to draw a negative inference from the no fingerprints. They did a sloppy job. Is that your Thompson argument? Yes. That has to come from that particular portion. That's when the objection was made by Jennings, and the Court sustained the objection. Yes, exactly. It's the second part of the Thompson case, where the Court says the trial court could have limited this line of argument. Well, and the standard of review is that, well, first of all, I have to look and see if there's a constitutional problem here under Thompson. Secondly, it's an abuse of discretion in what the judge did. So we have to find there was an abuse of discretion for him to sustain that objection at that point, I think, under Thompson. That would be the government's position, Your Honor, that it is an abuse of discretion standard. This does not rise to a constitutional dimension. I guess we'd have to then consider the two times when no fingerprint evidence that the jury heard for objection and no motion to strike also in that context. Correct. I mean, the defense certainly got the argument out. The jury must have got the point that there are no fingerprints. This is a circumstantial case. They can't show my client handled the drugs. My client's saying he didn't know about the drugs. Therefore, we win. The jury got that, and they convicted nonetheless. But bringing in the sloppy job that they did at the end shifted under Thompson to the negative of that. I mean, you could argue there's no evidence, which everybody knew, but it's a shifting of that evidence to the negative impact created that they did a lousy job. Correct. And, again, I think, and this is somewhat speculative, I think if Mr. Goldsmith had said, did you hear from a fingerprint expert, did the government call an expert witness? No. You never heard an expert say they found my client's fingerprints on the dope. I don't think that draws an objection. And if it does, I think that objection is overruled. It's the way it came up after he objected when the government tried to get in the fingerprint evidence. They tried to get in. I'm sure Mr. Jennings' reaction was, hey, that's not fair. I made an effort. And I think that's the judge's reaction. That's why the judge sustained that objection. Different argument, different result. I see my time is up. Thank you. Just one point to make with respect to the government's argument just now, and that is it assumes that the jury doesn't follow the trial court's instructions before closing argument. Go to page 21 of the excerpt where the court says, if the court sustains the objection, the question cannot be answered and the exhibit cannot be received. When the court sustains an objection to a question, please ignore the question. Do not guess at what the answer may have been. The court doesn't go on to say what happens when the answer is stricken, but I think it's fair to read into this. The jury understands. You don't take those things into account. Well, that makes an interesting argument because then closing the defense counsel brings it up again. I mean, it's sort of a circuitous process. What is the jury supposed to do unless they sustain? So the judge, again, abuse of discretion? Well, we've got two issues on the standard review. One is the relevance of the argument that Mr. Goldsmith is trying to make. Certainly it is relevant in the court reviews at de novo. That they did a sloppy job of investigation? Well, certainly I think he's entitled to make more than one argument during closing, but I think that the fingerprint evidence issue really relates only to the lack of evidence. That's what he should have logically and correctly been allowed to argue. The court should have given that limiting instruction. He should have been able to finish his argument and go home. Thank you. Thank you. Thank you to all counsel for your arguments. We're now adjourned. The case of United States v. Nguyen is submitted. All rise. This court is in the second round of hearings. This court is adjourned.
judges: Brunetti, McKeown, W. Fletcher